IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| WANDA MARIE McGRAW | : | |
| | : | |
| v. | : | Civil Action No. DKC 20-0265 |
| | : | |
| KATHY NUTTER, et al. | : | |
| | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case are a motion to dismiss filed by Defendant Southern Maryland Electric Cooperative ("SMECO") (ECF No. 18), a motion to dismiss filed by Defendants Michelle Lekan, Kathy Nutter, Rhosheeda Proctor, and Valerie Stone (collectively, the "Individual Defendants")(ECF No. 19), a "motion to dismiss" the Individual Defendants by Plaintiff Wanda McGraw (ECF No. 24), a motion to seal by Plaintiff (ECF No. 25), and a consent motion to dismiss the individual defendants (ECF No. 33). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motions to dismiss will be granted.

**I.   Background**

Unless otherwise noted, the facts outlined here are set forth in the complaint and/or supplement and construed in the light most favorable to Plaintiff. Ms. McGraw was hired as an administrative

assistant with SMECO on April 16, 2013.[1]  Ms. McGraw apparently joined the International Brotherhood of Electrical Workers ("IBEW") as a union member on July 22, 2014.  That same day her position was reclassified from a management position to a "Bargaining Unit Employee."  As such, the "terms and conditions" of her employment, were governed by a Collective Bargaining Agreement between SMECO and IBEW.[2]  Plaintiff was placed on a "Performance Improvement Plan," which she was forced to restart after another reclassification of her position on November 30, 2018.  On June 21, 2019, she was terminated.

While SMECO maintains that she was fired for "unsatisfactory performance," Ms. McGraw implies that this is merely pretextual; she argues the termination was "wrongful" and a violation of her rights as an IBEW member.  On February 4, 2020, Plaintiff filed her original complaint with this court, citing a violation of Title VII of the Civil Rights Act of 1964, §§ 2000e *et seq*, alleging various forms of "discriminatory conduct" by SMECO: a failure to promote her, unequal terms of employment, retaliation, harassment, and termination.  Her original complaint was accompanied by an

---

[1] This was the second period of employment Ms. McGraw had with SMECO as made clear by her reference to an earlier "first tenor with SMECO," years earlier.

[2] Plaintiff refers to the agreement as the "Union Contract" in her Amended Complaint (ECF No. 4, "Statement Nature of Action," ¶ 24), but attaches portions of it (ECF No. 4-1, at 15), and SMECO clarifies.  (ECF No. 18, at 1).

Equal Employment Opportunity Commission ("EEOC") "Notice of Right to Sue letter" dated November 5, 2019.  (ECF No. 1-3).  The original complaint named SMECO and four individuals occupying supervisory roles over Plaintiff as Defendants. (ECF No. 1).

On February 14, 2020 Magistrate Judge Gina Simms found the original complaint deficient under Fed.R.Civ.P. 8(a) due to its failure to cite any "alleged motivation for defendants' conduct (*i.e.*, race, color, gender/sex, religion, national origin, and/or age)."  Plaintiff was granted twenty-eight days to "supplement" the complaint.  (ECF No. 2).  Ms. McGraw filed a "Complaint Supplement" on March 12, 2020.  (ECF No. 4).  On June 15, 2020, the case was reassigned to this member of the bench.  Four days later, SMECO and the Individual Defendants both moved to dismiss citing a "lack of jurisdiction" due to Plaintiff's failure to exhaust administrative remedies and a failure to state a claim.[3] (ECF Nos. 18 and 19).  On July 14, in response, Ms. McGraw filed a motion to dismiss the four individually named Defendants herself, which included a response to SMECO's motion to dismiss (ECF No.

_____

[3] While Defendants initially offer both Fed.R.Civ.P. 12(b)(1) and 12(b)(6) as the relevant standards, they clarify in a supplement that exhaustion arguments are not actually a question of jurisdiction at all but are properly treated under Fed.R.Civ.P. 12(6).  (ECF No. 35, at 1) (citing, among others, *Fort Bend Cty., Texas v. Davis*, 139 S.Ct. 1843, 1850-51 (2019)); (ECF No. 36, at 1) (same).

3

24),[4] and moved to seal portions of the exhibits to her supplemental complaint. (ECF No. 25). Two days later she filed a supplement to her opposition that attached a copy of SMECO's "Non-Discrimination in Employment Policy." (ECF No. 28). On July 17, she re-filed an opposition specific to SMECO's motion to dismiss, reiterating the same arguments put forth in her earlier, combined response. (ECF No. 29). On July 20, she filed another opposition to SMECO's motion that appears virtually identical to the previous response. (ECF No. 30). Both SMECO and the Individual Defendants replied on July 29. (ECF Nos. 31 and 32). That same day, the Individual Defendants filed a "Motion for Entry of Uncontested Dismissal" with prejudice, citing Ms. McGraw's consent to their dismissal. (ECF No 33).

## II.  Standard of Review

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), as are conclusory

---

[4] This paper, along with Plaintiff's subsequent motions, attempts to add new allegations, among other places, in a preamble entitled "SMECO Employment Dates," including Plaintiff's alleged "'Wrongful Termination I' For Pregnancy" in 1990, during her first term of employment with SMECO.

factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III. Analysis

### A. Individual Defendants

Plaintiff has abandoned her claims against the Individual Defendants. Plaintiff "accepts" their motion to dismiss in her uniquely postured motion to dismiss them herself, and these Defendants further highlight this fact in their "motion for entry of uncontested dismissal." Accordingly, the Individual Defendants' original motion to dismiss will be granted (ECF No. 19), and the subsequent motions requesting their dismissal will be denied as moot. (ECF Nos. 24, 33).

### B. SMECO

Ms. McGraw purports to make myriad claims against SMECO. Ultimately, all fail. A number of these claims are newly alleged in the supplement and are not predicated on the underlying EEOC

complaint.  In naming a grab bag of disparate civil rights statutes beyond the original Title VII complaint, these "claims" either fail to plead facts sufficient to state a claim with any kind of particularity, or do not supply an independent cause of action, or both.

### 1.  Non-Title VII Claims

In her supplement, Ms. McGraw cites "intentional employment discrimination" as a basis, not only for her Title VII claims, but for a claim under the "*Civil [R]ights Act of 1991*," as well. (ECF No. 4, "Statement Nature of Action," ¶ 18).  SMECO correctly argues, however, that the Civil Rights Act of 1991 does not give rise to an independent cause of action.  (ECF No. 18-1, at 31-32) (collecting cases; *see also Pollard v. Wawa Food Mkt.*, 366 F.Supp.2d 247 (E.D.Penn. 2005) ("Thus, the language of § 1981a indicates that the statute provides additional remedies for plaintiffs who can otherwise show violations of Title VII, but does not create a new cause of action.").  Plaintiff seems to concede this point by responding that the "Cause for action [was] provided in [the] supplemental complaint . . . citing Title VII of the Civil [R]ights Act of 1964." (ECF No. 29, at 16).  Plaintiff's independent claims under the Civil Rights of 1991 will be dismissed.

Ms. McGraw also brings a claim under the Equal Pay Act of 1963 ("EPA") by alleging that two co-workers received bonuses and

overtime pay, while she was excluded from the opportunity to earn either.   To plead properly an EPA violation, a plaintiff must allege a disparity in pay between herself and an employee of the opposite sex, for similar work, and "under similar working conditions."  *See Spencer v. Va. State Univ.*, 919 F.3d 199, 203 (4th Cir. 2019).  The supplement dedicates only a single paragraph to the EPA claim, and the gender of the two-coworkers is not identified.  (*See* ECF No. 4, "Statement Nature of Action," ¶ 21; "Sixteenth Claim for Relief").  SMECO argues that Ms. McGraw states insufficient facts to establish any of the elements of an EPA violation and fails to allege when such disparity occurred as is required to show that the "claim is timely."  While timeliness need not be affirmatively proven at this stage, Plaintiff concedes that the claim "is untimely."  (ECF No. 29, at 17).  Plaintiff's claim under the EPA will therefore be dismissed.

Ms. McGraw also alleges a claim under the "Fair Labor Act 1938 Standards" which is similarly confined to a single paragraph, but is expanded upon under her prayer for relief.  (*See* ECF No. 4, "Statement Nature of Action," ¶ 22; "Eighteenth Claim for Relief"). She alleges that a co-worker and fellow union member got paid "70 cents more per hour" than she did for the same position.  SMECO correctly points out, however, that the Fair Labor Standards Act ("FLSA") ensures only that employers pay employees fair wages under federal minimum wage laws, including a premium paid to qualified

employees for overtime work performed in excess of forty hours per week. (ECF No. 18-1, at 35-36) (citing *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017)). The law does not deal with relative wage differentials between employees and only ensures that those who can show they worked in excess of forty hours a week are properly compensated. Even if Ms. McGraw's prior allegations concerning exclusion from overtime work and pay are incorporated into this claim, SMECO rightly points out that the failure to provide overtime opportunities is not an FLSA violation. (*Id.*, at 36) (citing *Grant v. ISEC, Inc.*, No. RBD 08-2791, 2010 WL 1569856, at *4 (D.Md. April 19, 2010)) ("[The FLSA does not] provide a cause of action for . . . the denial of the *opportunity* to work overtime"). Plaintiff will not be granted leave to amend this claim, moreover, as her outright exclusion from overtime work makes any amendment futile. *See* Fed.R.Civ.P. 15(a). Her claim under the FLSA will be dismissed.[5]

The supplement also specifically invokes the National Labor Relations Act of 1935 ("NLRA") by alleging "unfair treatment" in her supervisor's appraisal of her work. (ECF No. 4, "Fifth Claim of Relief"). SMECO points out, however, that claims under the

---

[5] SMECO raises a timeliness concern here as well, to which Plaintiff cryptically "Directs [Defendant's] Response to Dismission Motion EPA, *See* part C." While SMECO is correct to argue that this appears to be a concession that these claims are also untimely (ECF No. 31, at 14), this claim is dismissed for failure to state a claim, so this challenge need not be addressed.

NLRA are subject to the exclusive jurisdiction of the National Labor Relations Board. (ECF No. 18-1, at 37) (citing *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1959)).[6] Plaintiff "denies" this argument. But her attendant explanation cites only SMECO internal policy and makes allegations concerning her "differential treatment" and a hostile work environment that are nonresponsive to the jurisdictional issue. Plaintiff's claim under the NLRA will be dismissed pursuant to Fed.R.Civ.P. 12(b)(1).

Ms. McGraw also asserts a grab bag of "claim[s] for relief" that state no actual cause of action (*See* ECF No. 4, Sixth-Ninth, Thirteenth, and Nineteenth "Claim for Relief"). SMECO does not explicitly move to dismiss these claims, but they cannot survive as they do not identify a cause of action to which SMECO could reasonably respond. She asserts, for example, a failure of her employer to abide by the "SMECO Diversity and Inclusion Policy," "SMECO Board Policy," and to help her with her "request to file complaints as per Board Policy and the Union Contract," relevant portions of which she attaches at exhibits. (ECF No. 4-1, at 10-21, 36-37) (filed under seal). It is entirely unclear by what mechanism Ms. McGraw expects to hold SMECO accountable for

---

[6] SMECO submits exhibits showing that Ms. McGraw initially pursued this matter before the NLRB alleging retaliation in the form of transfer, placement on a "performance improvement plan," and, ultimately, termination for engaging in "union activities or other protected concerted activities." She ultimately requested to withdraw this charge, however, and the NLRB has closed her case. (*See* ECF Nos. 18-5 and 18-6).

violations of its own policies, and, insofar as she claims a breach of contract, the complaint is entirely devoid of facts that would establish a particular contractual duty owed to Plaintiff or that such duty was breached.   Ms. McGraw also alleges a "Failure to Represent in Violation of the Civil Rights Act of 1931" against "the Union" for its failure to represent her in filing a grievance for harassment.   (ECF No. 4, "Seventeenth Claim for Relief").   There is no such statute, however, and the IBEW is not named as a defendant.   Accordingly, all remaining non-Title VII claims will be dismissed.

### 2.   Title VII Claims

SMECO first argues that Ms. McGraw's Title VII claim should be barred in its entirety, because she did not file her lawsuit within ninety days of receipt of the Right to Sue Letter.   She received this letter on November 5, 2019, but "did not file until February 4, 2020, 91 days later."   (ECF No. 18-1, at 13) (citing ECF No. 18-4).   SMECO points to two cases it says reflect that the Fourth Circuit has treated filing a complaint pursuant to an EEOC Right to Sue Letter even a day late as fatal.   *See Dixon v. Digit. Equip. Corp.*, 976 F.2d 725 (Table) (4th Cir. 1992) (dismissing a Title VII suit filed on the 91st day); *Harvey v. City of New Bern Police Dep't*, 813 F.2d 652 (4th Cir. 1987) (same).   However, SMECO fails to note that both cases explicitly note the lack of *any* facts to support equitable tolling.   *Dixon*, 976 F.2d at *1; *Harvey*, 813

F.2d at 654.  Plaintiff cites to the "Covid-19 Pandemic," and its attendant postal delays as cause for the delay.  As she notes, the complaint was postmarked on January 31st, 2020.[7]  SMECO correctly responds that the date the court *received* the complaint is what controls, but it is wrong to state "there are no grounds for equitable tolling."  (ECF No. 31, at 4-6).  Having put forth an ample justification for equitable tolling here (despite the lack of such a motion), Plaintiff's complaint will not be dismissed on this ground.

SMECO does, however, correctly argue that any complained of conduct occurring more than 300 days before the filing of her EEOC charge is time-barred.  (*See* ECF No. 18-1, at 17-18).  Her official complaint was filed with the EEOC on October 25, 2019, (ECF No. 1-4), which means any alleged conduct occurring before December 29, 2018 is not properly considered.  Plaintiff implies that this timeline is skewed unfairly in that she first attempted to file an EEOC complaint on July 3, 2019, but that an appointment was not available until October 24, 2019.  (ECF No. 30, at 14) (citing ECF No. 26, at 1-3) (filed under seal).  As SMECO points out, however, even if the court were try to construe these documents as a

---

[7] The package was sent from La Plata on Friday, January 31 at 3:14 pm via priority mail express, with one day delivery.  Tracking information reveals that delivery was attempted on Saturday, Feb. 1 at 10:32 a.m., but the courthouse was closed.  Why it was not delivered on Monday, Feb. 3 is not stated. The next delivery attempt was on Feb. 4.

"charge" with the EEOC for tolling purposes, these document fail to comply with EEOC regulations that mandate a "Title VII Charge" must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." (ECF No. 31, at 9) (citing 29 C.F.R. § 1601.12(b)). Such submissions do not expand the limitations period.

While Plaintiff's timeline of allegations is far from clear or explicit, Ms. McGraw makes multiple references to allegedly adverse actions taken against her by her employer throughout 2017 and 2018. (*See* ECF No. 4, "Introduction," ¶¶ 8-10, 15). She also seemingly seeks to add, in her opposition to SMECO's motion, a claim of wrongful termination against SMECO in 1990, during her first period of employment. (ECF No. 29, at 4). Even if Ms. McGraw were allowed to amend her complaint further to add this allegation, such efforts would be futile. Fed.R.Civ.P. 15(a). The allegations occurring before December 29, 2018, are time-barred and will be dismissed. Allegations concerning the period after December 29, 2018, until her termination on June 21, 2019, are analyzed below.

### a. Discrimination

SMECO raises a second exhaustion challenge to Ms. McGraw's discrimination claim, arguing that she did not "exhaust the required administrative procedures with respect to any claim other than a retaliatory termination claim." (ECF No. 18-1, at 13).

A "[c]harge of [d]iscrimination," as SMECO points out, must first be filed "with the appropriate agency and exhaust the agency's administrative process." (ECF No. 18-1, at 13) (citing 42 U.S.C. § 2000e-5(f)(1). Ms. McGraw's complaint in this court lists the following "discriminatory conduct": 1) "Termination of my employment," 2) "Failure to promote me," 3) "Unequal terms and conditions of my employment," 4) "Retaliation," and 5) "Harass[]ment." (ECF No 1, at 5). In the original EEOC complaint, where she was required to plead all claims of discrimination in the first instance to satisfy the exhaustion requirement, she only checked the "RETALIATION" box as the basis of discrimination. (ECF No. 1-4). Any subsequent claim of "disparate treatment or harassment," as SMECO argues in its reply, "cannot proceed for that reason alone." (ECF No. 31, at 12).

Plaintiff attempts to salvage these claims by pointing to allegations of "Sabotage, Retaliation, Equal Compensation, Exclusion, Slander and Harassment" contained in correspondences with the EEOC as part of the intake process leading up to the issuance of her right to sue letter. (ECF No. 30, at 15) (citing ECF No. 26, at 1) (filed under seal). However, SMECO correctly argues in reply that only the formal charging document with the EEOC is analyzed for exhaustion purposes. (ECF No. 31, at 7) (citing *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013)) ("In determining what claims a plaintiff

properly alleged before the EEOC, we may look only to the charge filed with that agency . . . . The intake questionnaire and the letters [Plaintiff] submitted to the EEOC cannot be read as part of her formal discrimination charge without contravening the purposes of Title VII."). These intake forms are unable to resurrect any claim outside of retaliation.

Ms. McGraw has exhausted administrative remedies only as to her retaliation claim, and not as to any claim of discrimination. While Plaintiff purports to assert various forms of discriminatory conduct in this court, she does not allege any basis (protected status) for the alleged discrimination either in the "Charge of Discrimination" originally lodged with the EEOC (ECF No. 1-4), or in her complaints here.  Title VII prohibits discrimination based on specific protected statuses, however Plaintiff does "not allege any discrimination based on race, color, sex, religion or national origin." (ECF No. 18-1).  Instead, the "discriminatory conduct" is an alleged response to other allegedly protected activity, such as the fact that "Plaintiff spoke up for herself, as well as for SMECO past and future employees." (ECF No. 4, "Introduction," ¶ 12).  The original EEOC Complaint, however, states that, "I was not given a reason for the above treatment." (ECF No. 1-4). Plaintiff has failed to exhaust this claim, and, regardless, neither the original complaint nor the supplement point to the

kind of discrimination prohibited under Title VII.  Plaintiff's claim of discrimination will be dismissed.

### b.  Retaliation

To state a claim for retaliation under Title VII, "the plaintiff must prove that (1) the plaintiff engaged in a protected activity; (2) the employer took an adverse employment action against the plaintiff; and (3) there was a causal connection between the two events." *Wimbush v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc.*, No. TDC-14-0525, 2016 WL 775410, at *13 (D.Md. Feb. 29, 2016) (citing *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015)).  Protected activity for a Title VII retaliation claim involves either making a charge, testifying, assisting, or participating in an investigation, proceeding, or hearing under Title VII, or opposing any practice made unlawful under Title VII.

SMECO argues that Ms. McGraw has failed to allege that she was engaged in a protected activity, that she does not state an "adverse employment action," "other than the termination of her employment, and does not sufficiently" plead a causal connection between the alleged conduct and a protected activity.  (ECF No. 18-1, at 18).  As SMECO is correct on the first front, its other arguments need not be addressed.

Ms. McGraw fails sufficiently to identify what specific protected activity she was engaged in, other than vague references

15

to her union activity — which is not a protected activity under Title VII.[8]  SMECO argues that "McGraw makes absolutely no attempt to refute" this shortcoming and that she therefore has effectively conceded this point.  (ECF No. 31, at 11).  Indeed, a failure to respond to an argument in a dispositive motion may be fatal.  *See Faller v. Faller*, No. DKC 09-0889, 2010 WL 3834874, at *6 (D.Md. Sept. 28, 2010); *see also Ferdinand-Davenport v. Child.'s* Guild, 742 F.Supp.2d 772, 777 (D.Md. 2010).  Regardless, Ms. McGraw has failed to allege a central element of retaliation.

Beyond the legal conclusion that, "Defendants', their agents', and/or employees' retaliatory actions would deter a reasonable employee from engaging in protected activity under [T]itle VII," Ms. McGraw offers only glimpses of what she believes motivated her employer's "Sabotage, Intimidation, and Retaliation" of her through negative performance reviews and, ultimately, termination.  She points to having "spoke up" for herself and her coworkers, and to a "statistical imbalance of employee turnover in the Administrative Services Department" in apparent reference to the type of workplace concern she raised with her employer.

The original complaint contains some specificity for these allegations, but even viewing them in conjunction with the supplement, the allegations are insufficient.  Plaintiff appends

---

[8] The EEO complaint in this case was not filed until after Plaintiff's termination.  Obviously, then, none of the preceding conduct can be retaliatory for that filing.

an exhibit entitled "Additional Notes," which states that on June 21, 2019 she was "wrongfully terminated." She references "PROTECTED UNION ACIVITY in the union contract," that she contends ensured her a replacement position instead of outright termination. Instead, "[t]he Retaliation began when I spoke up with the Union," she explains. (ECF No. 1-2). All of this revolves around her advocacy with her union, and none of it is protected under Title VII. Ms. McGraw's Title VII retaliation claim will be dismissed.[9]

### c.  Hostile Work Environment

Finally, Plaintiff purports to assert a hostile work environment claim. To establish a hostile work environment claim under Title VII a plaintiff "must show 'that the offending conduct (1) was unwelcome, (2) was based on her [protected status], (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer." *Ziskie v. Mineta*, 547 F.3d 220, 224 (4th Cir. 2008) (quoting *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir.) (en banc)). A hostile workplace is one so "permeated with 'discriminatory intimidation, ridicule, and

---

[9] Such activity is instead protected under the NLRA. *Gestamp S.C., L.L.C. v. N.L.R.B.*, 769 F.3d 254, 261 (4th Cir. 2014) ("It is a violation of 29 U.S.C. § 158(a)(3) and (a)(1) to discharge an employee for engaging in protected activity."). As mentioned, however, such claims are the exclusive domain of the National Labor Relations Board, and so granting Plaintiff's leave to amend such a claim would be futile. *See* Fed.R.Civ.P. 15(a).

insult'" it "alter[s] the conditions of the victim's employment and create[s] an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (citing *Meritor Savings Blank, FSV v. Vinson*, 477 U.S. 57, 64-65 (1986)).

Like those claims already discussed, this claim fails for lack of any alleged discriminatory basis under Title VII. Ms. McGraw simply does not allege that *any* conduct was based on a protected status recognized by Title VII. Moreover, even viewed collectively, the unfair and unequal treatment that she alleges culminated in her termination does not nearly rise to the pervasive, frequent, and severe conduct that would form a proper hostile work environment claim. Even though the reclassifications of Plaintiff's position and her termination affected the terms and condition of her employment, Ms. McGraw fails plausibly to show such instances were concentrated in time or were severe enough to constitute "harassment." Ms. McGraw also does not establish that *any* of this conduct was based on a protected status recognized by Title VII.

On the other hand, this claim would not fail for failure to exhaust remedies. Unlike a discrimination claim, a hostile work environment claim may grow out of an original claim of retaliation and thus is not necessarily barred by Ms. McGraw's failure to plead it in her EEOC Charge. The underlying EEOC complaint recites that "I was discriminated against with respect to unequal terms and

18

conditions of employment and discharge in retaliation for engaging in a protected activity in violation of Title VII of the Civil Rights Act of 1964." Ms. McGraw subsequently alleges "harassment" as part of a hostile work environment claim emanating from the same conduct; her "Fourth Claim for Relief" requests a remedy, "[f]or [SMECO] subjecting [her] to a hostile work environment for Whistleblowing, standing up." Therefore, the underlying EEOC claim of retaliation, construed liberally, satisfies the exhaustion requirement as to a hostile work environment claim in that the two are reasonably related. *Cf. Finlay v. Fortis Inst.-Towson*, No. JKB-15-1184, 2015 WL 5920905, at *5 (dismissing a hostile work environment claim, despite a mandate to construe EEOC complaints liberally, because it "was not included in his EEOC charge, is not reasonably related to his racially discriminatory discharge claim, was not likely to be developed by reasonable investigation of the original complaint, and was, therefore, not administratively exhausted prior to suit.").

Plaintiff's claim of a "hostile work environment" will be dismissed.

## IV. Motion to Seal

Plaintiff has filed a motion to seal the exhibits to her supplemental complaint. (ECF No. 25) (citing ECF No. 4-1). She requests that only the portions "containing private information related to details of a civil action" be sealed. Ms. McGraw makes

the request "for privacy reasons for all parties" but does not specify which portions she seeks sealed. The entirety of these exhibits, therefore, has been placed under seal pending this motion (ECF No. 4-1). The motion also attached a new set of exhibits that were docketed separately, also under seal. (ECF No. 26).

Local Rule 105.11 requires the party seeking sealing to include "(a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection." Before sealing any documents, the court must provide notice of the request to seal and an opportunity to object to the request before the court makes its decision. *See In re Knight Publi'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984). Either notifying the persons present in the courtroom or docketing the motion "reasonably in advance of deciding the issue" will satisfy the notice requirement. *Id.* When a motion to seal is denied, the party making the request to seal ordinarily will be given an opportunity to withdraw the materials. Local Rule 105.11.

Plaintiff's motion is unopposed, but the entirety of the exhibits included with her supplemental complaint need not be sealed, nor does it appear that this is what Ms. McGraw has requested. (*See* ECF No. 25) ("RECORD REQUEST TO SEAL (SPECIFIC PART ONLY) Docket #4 1 ATTACHMENT 40 Pages"). To begin with, Ms. McGraw relies specifically on some of the conduct catalogued and

20

referenced in these previous complaints in her unsealed papers and they are relevant to SMECO's exhaustion arguments. Moreover, the more recent set of exhibits is relied on, in relevant parts, by Plaintiff to argue exhaustion, to point to union bylaws, and to establish the timeline of a filing and her attempts to serve a Defendant. The motion to seal, moreover, attaches these sixteen pages of exhibits separate from those explicitly marked for sealing, and her later request for a copy of them explains that she did not mean for them to go under seal. (ECF No. 34).

Nevertheless, as Plaintiff alludes to in her motion, there appears to be numerous co-workers and supervisors whose names and actions are discussed in her previous administrative filings who are not named in the current complaint and are not relevant to it. (*See* ECF No. 4-1, at "20"). Also, while she does not mention them in her motion to seal, the letters between SMECO and a customer which purports to show Ms. McGraw's stellar job performance, similarly also contain private third-party information that is irrelevant to the matter at hand. The rest of the exhibits contain SMECO policies and its agreement with IBEW, which includes a pay scale for various positions. They are not only relevant to the claims at hand, but SMECO does not argue they are proprietary or otherwise privileged documents. There are communications from SMECO that do, however, name individuals not named in the complaint.

In order to protect the privacy of those individuals not named in or relevant to the original or supplemental complaint, a redacted copy of the exhibits filed will be filed publicly.  The motion to seal will be granted in part and denied in part.  The clerk is directed to file separately a redacted version of the exhibits supporting the supplement to Plaintiff's complaint filed at ECF No. 4-1 and mark the public version as REDACTED.  The more recently filed set of exhibits will be unsealed in their entirety. The motion to seal will be denied insofar as it requests any redaction beyond what is provided therein.

## V.   Conclusion

For the foregoing reasons, Plaintiff's complaint as supplemented will be dismissed, and the motion to seal with be granted in part and denied in part.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
